## NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY ET AL. *v.* STATE OF TENNESSEE ET AL.

## UNITED STATES AND INTERSTATE COMMERCE COMMISSION *v.* STATE OF TENNESSEE ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF TENNESSEE.

Nos. 396 and 429. Argued April 11, 12, 1923.—Decided May 21, 1923.

1. Section 22 of the Act to Regulate Commerce, as amended, in declaring that nothing in the act shall prevent the carriage of property free, or at reduced rates, for the United States, state or municipal governments, does not in effect deny to the Interstate Commerce Commission power to prohibit such reduced rates when they result

---

in unjust discrimination or in undue prejudice to interstate commerce. P. 320.

2. The object of this section was to settle beyond doubt that the preferential treatment of certain classes of shippers and travelers in matters therein recited is not necessarily prohibited; it limits or defines the requirement of equality imposed in other sections of the act, and so preserves the right theretofore enjoyed by the carrier of granting preferential treatment to particular classes, in certain cases, and in this sense only is permissive; but it confers no right upon any shipper or traveler, nor any new right upon the carrier. P. 323.

3. The State of Tennessee authorized increases of intrastate freight rates to correspond with a level of interstate rates authorized by the Interstate Commerce Commission, but excluded rates on stone and gravel when for use in building public highways and consigned to federal, state, county and municipal authorities. The Interstate Commerce Commission, on complaint of a carrier, found that the exception produced illegal discrimination against interstate commerce and undue prejudice to persons and localities engaged in such commerce and ordered increase of the rates.

*Held:* (*a*) That the findings are conclusive, the evidence on which the Commission acted not having been introduced in this suit. P. 324.

(*b*) That the order was valid. *Id.*

284 Fed. 371, reversed.

APPEALS from a decree of the District Court declaring void, and enjoining the enforcement of, an order of the Interstate Commerce Commission. The State of Tennessee and its Railroad and Public Utilities Commission brought the suit against the United States, to have the order set aside. The Interstate Commerce Commission and three carriers affected intervened as defendants.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, for the United States.

*Mr. J. Carter Fort,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

*Mr. William H. Swiggart, Jr.,* with whom *Mr. Frank M. Thompson,* Attorney General of the State of Tennessee, was on the brief, for appellees.

*Mr. Fitzgerald Hall,* with whom *Mr. John Bell Keeble* and *Mr. Charles N. Burch* were on the brief, for appellant carriers.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Section 22 of the Act to Regulate Commerce, as amended by Act of March 2, 1889, c. 382, § 9, 25 Stat. 855, 862, provides, among other things,

" That nothing in this act shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, State, or municipal governments, or for charitable purposes, or to or from fairs and expositions for exhibition thereat, . . ." [1]

Whether this section should be construed as denying to the Interstate Commerce Commission power to prohibit such reduced rates, even where they result in unjust discrimination or in undue prejudice to interstate commerce is the main question for decision.

On July 29, 1920, the Interstate Commerce Commission authorized a general increase, throughout southern territory, of 25 per cent. in interstate freight rates. *Ex parte 74, Increased Rates, 1920,* 58 I. C. C. 220. Thereafter, the Railroad and Public Utilities Commission of Tennessee authorized, for that State, a like increase of intrastate rates. But the following articles (among others) were excluded from this increase: Carload shipments of stone and gravel when for use in building public highways and consigned to federal, state, county and municipal authorities or their *bona fide* agents. To remove the exception, carriers applied to the Interstate Commerce Commission, claiming that the exception produced illegal discrimination against interstate commerce and an undue prejudice

---

[1] The first line of § 22 as originally enacted, 24 Stat. 379, 387, read, " That nothing in this act shall apply to the carriage," etc.

to persons and localities engaged in such commerce.    The
Commission found such discrimination; and ordered that
the intrastate rates on these commodities, also, be in-
creased to the level of the interstate rates.    *Tennessee
Rates and Charges,* 63 I. C. C. 160, 172.    On October 21,
1921, the State of Tennessee and its commission brought,
in the federal court for the Middle District of Tennessee,
this suit against the United States to have the order set
aside.    The Interstate Commerce Commission, the Nash
ville, Chattanooga & St. Louis Railway and two other
interstate carriers, intervened as defendants.    The case
was heard by three judges under the Act of October 22,
1913, c. 32, 38 Stat. 208, 219.    A final decree was entered,
declaring the order void, and enjoining its enforcement.
284 Fed. 371.    The case is here on two appeals.    No. 396
is that of the carriers; No. 429, that of the United States
and the Interstate Commerce Commission.

*Railroad Commission of Wisconsin* v. *Chicago, Burling-
ton & Quincy R. R. Co.,* 257 U. S. 563, had been decided
by this Court before entry of the judgment appealed
from.    But the District Court considered that case inap-
plicable; and held that, by reason of § 22, the Interstate
Commerce Commission is " without jurisdiction to forbid
the railroads from carrying freight for the public at a less
price than it charges individuals for the same carriage of
the same freight; " that the section " excludes this par-
ticular traffic from the rate structure which the Commis-
sion is authorized to erect and control  in still other words,
there is freedom of discrimination."

The argument is, in substance, this: An order of the In-
terstate Commerce Commission increasing intrastate rates
to the level of interstate rates, must rest upon a finding
of illegal preference resulting from the relation of intra-
state to interstate rates.    Preference to governmental
shippers is expressly permitted by § 22 of the act.    Hence,
a grant of such preference cannot be held to be unjust or

unreasonable under §§ 2 and 3. There was no finding
that these lower intrastate rates resulted in failure of
the intrastate traffic to yield its proper share of the earn-
ings of the carriers. Consequently, the order of the Com-
mission is void.[2] The argument is, in our opinion,
unsound.

Every rate which gives preference or advantage to cer-
tain persons, commodities, localities or traffic is discrim-
inatory. For such preference prevents absolute equality
of treatment among all shippers or all travelers. But
discrimination is not necessarily unlawful. The Act to
Regulate Commerce prohibits (by §§ 2 and 3) only that
discrimination which is unreasonable, undue, or unjust.
*Texas & Pacific Ry. Co.* v. *Interstate Commerce Com-
mission,* 162 U. S. 197, 219, 220; *Manufacturers Ry. Co.*
v. *United States,* 246 U. S. 457, 481. Whether a prefer-
ence or discrimination is undue, unreasonable or unjust
is ordinarily left to the Commission for decision; and the
determination is to be made, as a question of fact, on the
matters proved in the particular case. *Interstate Com-
merce Commission* v. *Alabama Midland Ry. Co.,* 168
U. S. 144, 170. The Commission may conclude that the
preference given is not unreasonable, undue or unjust,
since it does not, in fact, result in any prejudice or dis-
advantage to any other person, locality, commodity or
class of traffic. On the other hand, preferential treatment
of a class, ordinarily harmless, may become undue, be-
cause, under the special circumstances, it results in preju-
dice, or disadvantage to some other person, commodity,
or locality, or to interstate commerce.

---

[2] The order of the Interstate Commerce Commission was declared
void " to the extent that the rates therein ordered to be established
. . . apply to such transportation, for the United States, State or
Municipal governments, of stone and gravel, the title to which has
passed to the government or is vested in it at the point of the origin
of its transportation."

Section 22 must in this matter, as in others, be read in connection with the rest of the act, and be interpreted with due regard to its manifest purpose. *Robinson* v. *Baltimore & Ohio R. R. Co.,* 222 U. S. 506, 511.[3]  Congress did not intend, by this provision concerning reduced rates and free transportation, to create an instrument, by which the carrier was authorized, in its discretion, to subject interstate commerce to undue prejudice, or by which the State was empowered to compel the carriers so to do.  The object of the section was to settle, beyond doubt, that the preferential treatment of certain classes of shippers and travelers, in the matters therein recited is not necessarily prohibited.  And in this respect its provisions are illustrative, not exclusive.  It limits, or defines, the requirement of equality in treatment which is imposed in other sections of the act.  By so doing, it preserves the right of the carrier theretofore enjoyed of granting, in its discretion, preferential treatment to particular classes in certain cases.  Only in this sense can it be said that the section is permissive.  It confers no right upon any shipper or traveler.  Nor does it confer any new right upon the carrier.

The grant of a lower rate on road material to a government, engaged in highway construction, may benefit the government without subjecting to prejudice any person, locality or class of traffic.  But a lower rate may result in giving to a single quarry within the State all of the governmental business, so that competing quarries and localities within or without the State, or interstate traffic, would be prejudiced.  That such undue discrimination does, and will, result from the order of the Tennessee commission was expressly found by the Interstate Com-

---

[3] See also *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 446; *Pennsylvania R. R. Co.* v. *Puritan Coal Mining Co.,* 237 U. S. 121, 129, 130; *Illinois Central R. R. Co.* v. *Mulberry Hill Coal Co.,* 238 U. S. 275, 282.

merce Commission. Its findings are necessarily conclusive, since the evidence on which it acted was not introduced in this suit. *Louisiana & Pine Bluff Ry. Co.* v. *United States,* 257 U. S. 114.

There is nothing in *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.,* 145 U. S. 263, 278; *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173 U. S. 684, or *Pennsylvania R. R. Co.* v. *Towers,* 245 U. S. 6, inconsistent with the views expressed above. The decisions made by the Interstate Commerce Commission are in substantial harmony with them.[4]

*Reversed.*

MR. JUSTICE SANFORD took no part in the consideration or decision of these cases.

---

[4] Section 22 has been construed by the Commission as conferring upon carriers such permission to furnish transportation at reduced rates or free, in certain cases; as not conferring upon any shipper or traveler a right to such transportation; and, ordinarily, as not conferring upon the Commission power to establish such exceptions to the normal rates and fares. *Sprigg* v. *Baltimore & Ohio R. R. Co.,* 8 I. C. C. 443; *Field* v. *Southern Ry. Co.,* 13 I. C. C. 298; *Metropolitan Paving Brick Co.* v. *Ann Arbor R. R. Co.,* 17 I. C. C. 197, 204; *Eschner* v. *Pennsylvania R. R. Co.,* 18 I. C. C. 60, 63; *Dairymen's Supply Co.* v. *Pennsylvania R. R. Co.,* 28 I. C. C. 406; *United States* v. *Union Pacific R. R. Co.,* 28 I. C. C. 518, 524. See also *C. B. Havens & Co.* v. *Chicago & Northwestern Ry. Co.,* 20 I. C. C. 156. Compare *Cator* v. *Southern Pacific Co.,* 6 I. C. C. 113; *Commutation Rate Case,* 21 I. C. C. 428, 437; *United States* v. *Alabama & Vicksburg Ry. Co.,* 40 I. C. C. 405. Conference rulings provide, as to some reduced rates under § 22, that they must be filed and posted with the Commission; and as to others that they need not be. See Conference Rulings, Issued Nov. 1, 1917, Nos. 33, 36, 208e, 218, 244, 311, 452.