**CAPE FEAR RYS., Inc., v. UNITED STATES et al.**

No. 305.

District Court, E. D. Virginia, Richmond Division.

June 15, 1934.

Hitt & Munson, of Washington, D. C., and Irvin G. Craig, of Richmond, Va., for petitioner.

Elmer B. Collins, Sp. Asst. to Atty. Gen. J. Stanley Payne and R. B. Gwathmey, both of Washington, D. C. (Harold M. Stephens, Asst. Atty. Gen., and Sterling Hutcheson, U. S. Atty., of Norfolk, Va., Thomas W. Davis, of Wilmington, N. C., Frank W. Gwathmey, of Washington, D. C., J. M. Townsend, of Petersburg, Va., and Denny & Valentine, of Richmond, Va., on the brief), for defendants.

Before SOPER, Circuit Judge, and WAY and CHESNUT, District Judges.

WAY, District Judge.

This is a suit under the Urgent Deficiencies Act (38 Stat. 219, U. S. Code, tit. 28, §§ 41 (28), 43 to 48, as amended by Supp. VI, 28 USCA §§ 41 (28), 43–48) to set aside and enjoin an order of the Interstate Commerce Commission, fixing reasonable divisions of joint rates as between the Atlantic Coast Line Railroad Company and the Cape Fear Railways, Inc., hereinafter referred to, respectively, as the Commission, the Coast Line, and the Cape Fear.

The order was made on November 14, 1933, in a proceeding entitled No. 25309, Atlantic Coast Line Railroad Company v. Cape Fear Railways, Incorporated. The parts of the order here pertinent read:

"This case being at issue upon complaint and answer on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof:

"It is ordered, That out of the joint interstate rates for the transportation of property in interstate commerce to or from Fort Bragg, N. C., interchanged at Fort Bragg Junction, N. C., between complainant, on the one hand, and defendant, on the other, defendant shall have and receive, on and after December 21, 1933, as its reasonable and equitable divisions of said joint interstate rates, divisions of $5.85 per car, on carload traffic, and defendant's local rates for 5 miles and under, subject to a maximum of $5.85 per shipment from one consignor to one consignee on less-than-carload traffic.

"It is further ordered, That said defendant be, and it is hereby, notified and required to cease and desist on and after December 21, 1933, and thereafter to abstain, from asking, demanding, collecting, or receiving divisions of said joint interstate rates with complainant upon any basis other than that above prescribed."

The Coast Line operates more than 5,000 miles of railroad with its main lines extending from Richmond and Norfolk, Va., to Florida, and passing through Fayetteville, N. C. One of its branch lines extends northwesterly from Fayetteville to Sanford, N. C., on which branch near Fayetteville the Coast Line maintains a station called Fort Bragg Junc-

tion. That station marks the eastern boundary of Fort Bragg Military Reservation, which extends westward for a distance of 25 or 30 miles.

The Cape Fear operates a government-owned track extending from a point of connection with the Coast Line at Fort Bragg Junction to a station inside the reservation, called Fort Bragg, a distance of 1.75 miles. Within the reservation, there are various other government-owned tracks which lead to buildings, trestles, and other points at which freight is delivered. The Cape Fear leases these lines with their equipment from the government, and performs all transportation service within the reservation under contract with the government, for which the Cape Fear is paid $354 per month, and an additional allowance of 53 tons of coal and 75,000 gallons of water monthly. The Cape Fear maintains no schedule between Fort Bragg Junction and the reservation, but merely sends its engine to the junction for cars from time to time as they are placed there by the Coast Line on side tracks owned and maintained by the latter road.

Joint through rates, concurred in by the Coast Line, the Cape Fear, and other carriers, apply from various points to Fort Bragg. The bulk of the traffic moving under these rates, when routed over the Coast Line, moves via Virginia cities gateways, such as Richmond and Norfolk, or the more southern gateways of Columbia, S. C., and Augusta, Ga. At each of these gateways the Coast Line connects with one or more other carriers. The average haul of the Coast Line from these gateways to Fort Bragg Junction is 273 miles, as contrasted with an average haul of the same cars by the Cape Fear of only 4 miles from the junction to points in the reservation.

The proceeding before the Commission was commenced by complaint filed May 25, 1932, by the Coast Line, in which it named the Cape Fear as the sole defendant, and alleged that the divisions demanded, collected, and retained by the Cape Fear out of all interstate joint rates and charges on traffic interchanged between petitioner and defendant at Fort Bragg Junction, consigned to and from Fort Bragg, were unjust, unreasonable, and unduly prejudicial and preferential.

A full hearing was had upon the complaint at which much evidence, consisting of both oral testimony and documentary exhibits, was introduced. A proposed report was issued by the Commission's examiner, exceptions were filed by defendant to the proposed report, to which complainant replied, and the case was orally argued before the Commission.

November 14, 1933, the Commission issued its report and with it the order against which complaint is made in this suit. A printed copy of the report, including the several appendices, was submitted at the hearing of this case.

The report covered 14 printed pages (197 I. C. C. 397–410) and, after stating and discussing the facts in considerable detail, concluded that the services rendered by the Cape Fear in connection with the traffic under consideration are in their nature essentially switching movements, the performance of which is not attended with any unusual or particular difficulty, and that accordingly a fair switching charge is all that the Cape Fear is entitled to as its portion of the joint through rates in question. With respect to that question, the Commission, in its report, said: "We find that a just, reasonable, and equitable division of the rates in issue to be received by defendant is and for the future will be $5.85 per car on carload traffic and defendant's local class rates for 5 miles and under subject to a maximum of $5.85 per shipment from one consignor to one consignee, on less-than-carload traffic, and to the usual per diem reclaims and actual per diem for the period of detention of cars at Fort Bragg."

This finding did not operate as an increase or a decrease in pre-existing divisions, since there was no previous agreement by the carriers or finding by the Commission respecting divisions. The performance of the service by the Cape Fear as a common carrier from the point of connection with the Coast Line began January 25, 1931; the lines having theretofore been operated by the government from about 1920 until January 25, 1931.

It appears from the report of the Commission that the Cape Fear took the position that it was entitled to 35 per cent. of the revenue, which claimed percentage it actually retained; that is to say, the bulk of the traffic handled being inbound to the reservation, the Cape Fear collected the entire freight charges accruing on the shipments not prepaid, and was thus retaining a percentage not agreed to by the Coast Line or prescribed by the Commission. The Cape Fear never applied to the Commission for determination of just, reasonable, and equitable divisions. Thus the Coast Line was forced to submit to the division dictated by the Cape Fear or to institute appropriate proceedings before

the Commission to have the latter prescribe just divisions.

In its petition here the Cape Fear charges that the order of the Commission assailed is unlawful and void, upon the following grounds: (a) That it is unsupported by findings essential to its validity with respect to the cost to the Coast Line of transporting the traffic involved in the proceeding before it; and (b) that the Commission made finding of cost to the Cape Fear of transporting the traffic involved in the proceeding greatly in excess of the division which the Commission ordered that the Cape Fear should receive for its part of the transportation service.

To support these contentions the Cape Fear at the hearing relied entirely upon the report of the Commission, and accordingly did not offer any additional evidence or present the evidence heard by the Commission and upon which its findings were based. Defendants, the United States, the Coast Line, and the Commission, filed answers denying the allegations and conclusions in the petition which assail the validity of the order, but offered no evidence, so that the case came on to be heard upon the petition, the answers, and the report and order of the Commission.

■ In Mississippi Valley Barge Line Co. v. U. S. et al., decided April 30, 1934, 292 U. S. 282, 54 S. Ct. 692, 693, 78 L. Ed. 1260, with respect to the rule of law controlling in cases of this kind, the Supreme Court said: "The settled rule is that the findings of the Commission may not be assailed upon appeal in the absence of the evidence upon which they were made. Spiller v. Atchison, T. & S. F. R. Co., 253 U. S. 117, 125, 64 L. Ed. 810, 817, 40 S. Ct. 466; Louisiana & P. B. R. Co. v. United States, 257 U. S. 114, 116, 66 L. Ed. 156, 158, 42 S. Ct. 25; Nashville, C. & St. L. R. Co. v. Tennessee, 262 U. S. 318, 324, 67 L. Ed. 999, 1003, 43 S. Ct. 583; Edward Hines Yellow Pine Trustee v. United States, 263 U. S. 143, 148, 68 L. Ed. 216, 220, 44 S. Ct. 72; Chicago, I. & L. R. Co. v. United States, 270 U. S. 287, 295, 70 L. Ed. 590, 595, 46 S. Ct. 226. The appellant did not free itself of this restriction by submitting additional evidence in the form of affidavits by its officers. For all that we can know, the evidence received by the Commission overbore these affidavits or stripped them of significance. The findings in the report being thus accepted as true, there is left only the inquiry whether they give support to the conclusion. Quite manifestly they do. The structure of a rate schedule calls in peculiar

measure for the use of that enlightened judgment which the Commission by training and experience is qualified to form. Florida v. United States, April 2, 1934, 54 S. Ct. 603, 78 L. Ed. 1077. It is not the province of a court to absorb this function to itself. Interstate Commerce Commission v. Louisville & N. R. Co., 227 U. S. 88, 100, 57 L. Ed. 431, 436, 33 S. Ct. 185; Western Paper Makers' Chemical Co. v. United States, 271 U. S. 268, 271, 70 L. Ed. 941, 942, 46 S. Ct. 500; Virginian R. Co. v. United States, 272 U. S. 658, 663, 71 L. Ed. 463, 467, 47 S. Ct. 222. The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

It would appear therefore that the only inquiry which is left open is whether the findings of the Commission in its report support its conclusions. As applied to this case, this rule would seem to mean that the Commission having found that $5.85 was a fair and reasonable proportion of the rate to be given to the Cape Fear, the order directing this division was properly supported. If this rule is accepted, then this court has the right to presume that the Commission had before it in evidence the facts showing the number of shipments that were made over the two roads, the mileage covered, the amount of revenue derived from the shipments, and the fair compensation paid in other cases for similar switching service. We think, as observed in the Mississippi Barge Case, supra, that "the care and patience with which the Commission fulfilled its appointed task are plain, even to the casual reader, upon the face of its report."

■ And while it does not necessarily follow that in order to reach a correct conclusion in the matter the Commission must have had before it the cost to the Coast Line of its share of the transportation, nevertheless, so far as appears here, the Commission may well have had and considered that very element in arriving at the conclusion of which complaint is made. Certainly the report of the Commission does not negative that idea, but, on the contrary, rather supports the assumption that it did have that information before it, since it affirmatively appears from the report that many of the elements which enter into such cost were considered by the Commission. The question before the Commission was, not the cost to the Coast Line of its share of the transportation, but what was a proper and reasonable share of the revenue for the Cape Fear to receive. The cost to

the Coast Line of its share of the transportation involved may have been a proper element to be considered in determining such division, but it was not necessarily the controlling element, and it affirmatively appears from the report that the Cape Fear submitted evidence to the Commission on the question of proper division. For example, we quote from page 407 of the report (197 I. C. C.), where the Commission, after discussing at some length evidence offered by the Cape Fear on the subject of division, said: "Defendant (the Cape Fear) submitted numerous exhibits showing actual revenue yields to various short lines on traffic originating in eastern territory moving via the Virginia cities gateways based upon existing percents south of such gateways. For example, the first-class rate of $1.44 from New York to Fort Bragg, in connection with complainant, is divided 63 cents north of Norfolk and 81 cents south, which rate divided 65 percent and 35 percent would result in 53 cents to complainant for a haul of 213 miles and 28 cents to defendant for an average haul of 4 miles, as compared with 41 cents for the Seaboard and 20 cents each for the Aberdeen & Rockfish and defendant. Based upon a mileage prorate the 81-cent rate south of the gateway would divide 79 cents to complainant and 2 cents to defendant. Likewise the 81-cent rate over the Seaboard, Aberdeen & Rockfish, and defendant would divide 66, 11, and 4 cents, respectively."

These references to the report are made, not because it is considered necessary under the rule of law controlling in cases like this that the report affirmatively contains the finding which petitioner contends is absent, but as demonstrating that there is much on the face of the report itself which tends to disprove the assertion made by petitioner that cost to the Coast Line was not ascertained or considered.

We think, therefore, that there is no reason to believe that $5.85 is not a just and reasonable share of the rate. That is especially true where, as here, the service rendered by the complaining road is substantially identical in all shipments so far as the distance of haul and handling is concerned, and where in the great majority of instances the consignee of shipments destined to and consignor of those from the reservation is the same person, namely, the government, and where, as in the instant case, the complaining road maintains no passenger, express, or mail service but only switching service not based on any regular schedule. Under the circumstances, we think it is apparent that a per car basis of division is the fairest and most equitable that could have been applied.

With respect to the contention that the report shows that the rate allowed petitioner is less than the cost to it of the service (that is to say, is confiscatory), it is true that the report shows that petitioner offered some evidence having a tendency to show that the cost of the service substantially exceeds the $5.85 per car allowed. However, the report also shows that this was not all the evidence submitted on that issue but, on the contrary, that the Commission had before it other substantial evidence which tended to refute petitioner's contention as to cost of its service. That being true, the most that can be said in such a situation is that the Commission weighed the evidence before it on that issue and found against the Cape Fear. The Commission did not make findings of fact at variance with its general conclusions, and in such case it is clear that this court is without authority to interfere with or annul the Commission's conclusion.

Mention has already been made of the demand of petitioner for 35 per cent. of the joint revenue and of its action in withholding that percentage prior to the order of the Commission. While an average haul by the Coast Line of 273 miles as against one of only 4 miles by the Cape Fear may not in itself be decisive of the proper ratio of division between the two carriers, and while the carrier performing the shorter haul may, for reasons which it is not necessary to discuss here, be entitled to a greater proportion than that indicated by comparing the length of the respective hauls alone, nevertheless the demand made and insisted upon by the Cape Fear is one that on its face fails strongly to appeal to a court of equity. It does not have a tendency to create the impression that what is sought is nothing more than a just, reasonable, and fair division of the joint revenue.

For the foregoing reasons, the prayer for relief will be denied, and the bill dismissed at petitioner's cost.