## KOPPERS GAS & COKE CO. v. UNITED STATES et al.

### No. 2856.

District Court, D. Minnesota, Third Division.
Aug. 16, 1935.

John B. Keeler and Albert A. Mattson, both of Pittsburgh, Pa., and George W. Morgan, of St. Paul, Minn., for petitioner.

Elmer B. Collins, Asst. to Atty. Gen., for the United States.

E. M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, of Washington, D. C., for the Interstate Commerce Commission.

M. L. Countryman, Jr., of St. Paul, Minn., for defendant Northern Pac. Ry. Co.

R. J. Hagman, of St. Paul, Minn., for defendant Great Northern Ry. Co.

PER CURIAM.

The petitioner has brought this suit in equity for the purpose of enjoining, setting aside and annulling the order of the Interstate Commerce Commission hereinbefore referred to. The general report of the Commission in Ex Parte No. 104 is attached to the petitioner's bill as an exhibit, and is found reported in 209 I. C. C. 11. Copies of the supplemental report of the Commission and the order based thereon which the petitioner seeks to enjoin are attached to this decision. (See note at end of this opinion.) The effect of the order is to deprive the petitioner of an allowance of $1 per car which it has heretofore received from the defendant carriers for services claimed to have been rendered 'by it to such carriers in the switching and spotting of cars within its plant in St. Paul, Minn., but which the Commission has found to be plant services performed for its own convenience. The petitioner alleges that the order of the Commission is void because the findings upon which it is based are not sustained by the evidence and are not sufficient to sustain its order, and that its reports and order are arbitrary and in violation of its previous rulings. The answer of the Interstate Commerce Commission alleges that the reports and order complained of were made after a full hearing and upon competent evidence and are proper and lawful. The defendant carriers, by their answer, neither admit nor deny the allegations of the petition with respect to the validity of the reports and orders attacked by the petitioner, and allege that, solely in deference to the views of the Commission and in compliance with the order of June 24, 1935, each of them has filed a tariff, to become effective August 15, 1935, providing for the withdrawal and cancellation on that date of the allowances to petitioner. They assert that were it not for the findings contained in the reports of the Interstate Commerce Commission and the order of June 24, 1935, each of them would have maintained in force its tariff providing for the allowance of $1 per car to the petitioner. They also assert their willingness to make provision for these allowances to petitioner and to take necessary steps to reinstate such allowances, pro-

vided the order of the Commission is found to be unlawful, and is enjoined.

■ The evidence upon which the Commission has based its reports and the order complained of is not before us. The petitioner has presented a portion of the record evidence, which deals with the Minnesota By-Products Coke Company, the predecessor of the petitioner. The petitioner asserts that this is a transcript of all the substantial evidence upon which the reports and order of the Commission are based, so far as the petitioner is concerned. There is no proof of that fact, and counsel for the government and for the Interstate Commerce Commission assert that it is not all of the evidence, and have objected to it on that ground. It is, of course, obvious that it is not a complete transcript of the evidence upon which the general report of the Commission is based.

Under the circumstances, we are of the opinion that we have no power to question any of the findings of fact made by the Commission.

"The settled rule is that the findings of the Commission may not be assailed upon appeal in the absence of the evidence upon which they were made. Spiller v. Atchison, T. & S. F. R. Co., 253 U. S. 117, 125, 40 S. Ct. 466, 64 L. Ed. 810; Louisiana & Pine Bluff R. Co. v. United States, 257 U. S. 114, 116, 42 S. Ct. 25, 66 L. Ed. 156; Nashville C. & St. L. Ry. Co. v. Tennessee, 262 U. S. 318, 324, 43 S. Ct. 583, 67 L. Ed. 999; Edward Hines Trustees v. United States, 263 U. S. 143, 148, 44 S. Ct. 72, 68 L. Ed. 216; Chicago, I. & L. R. Co. v. United States, 270 U. S. 287, 295, 46 S. Ct. 226, 70 L. Ed. 590." Mississippi Valley Barge Line Co. v. United States et al., 292 U. S. 282, 286, 54 S. Ct. 692, 693, 78 L. Ed. 1260.

■ The Interstate Commerce Act § 14 (1), 49 USCA § 14 (1), requires that a report "shall state the conclusions of the commission, together with its decision." "That provision relieves the Commission from making comprehensive findings of fact similar to those required by Equity Rule 70½ (28 USCA § 723). But section 14 (1) does not remove the necessity of making, where orders are subject to judicial review, quasi jurisdictional findings essential to their constitutional or statutory validity." United States et al. v. Baltimore & Ohio R. Co. et al., 293 U. S. 454, 465, 55 S. Ct. 268, 273, 79 L. Ed. 587. See also, United States et al. v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, et al., 294 U. S. 499, 55 S. Ct. 462, 79 L. Ed. 1023, and Atchison, Topeka & Santa Fé Ry. Co. et al. v. United States et al., 55 S. Ct. 748, 79 L. Ed. 1382, opinion filed April 29, 1935.

It would seem that the main essential ultimate basic fact to sustain the order of the Commission in this case is that the transportation service terminated at the gateway of the petitioner's plant. If that finding of the Commission is sustained by the evidence, then it would follow that the allowances provided for in the tariffs were gratuities paid to the shipper, and clearly preferential. While we do not desire to foreclose the petitioner from asserting, upon the final hearing, the insufficiency of the findings to sustain the order complained of, the doubts which we entertain as to the adequacy of the findings are not sufficient to justify the issuance of a preliminary injunction.

■ The principles which are to guide a court such as this in the issuance of such an injunction are set forth in the case of Alabama et al. v. United States et al., 279 U. S. 229, 49 S. Ct. 266, 73 L. Ed. 675. An application for an interlocutory injunction is addressed to the sound discretion of the trial court, and the rule generally to be applied is that stated in the decision of the Supreme Court in Ohio Oil Co. v. Conway, 279 U. S. 813, 815, 49 S. Ct. 256, 73 L. Ed. 972.

■ We think it is clear that the order made by the Commission was within its general powers, and that it was made after a full inquiry. It is entitled to great respect, representing, as it does, the opinion of a body of experts upon matters within the range of their special knowledge and experience. Illinois Central R. Co. v. Interstate Commerce Commission, 206 U. S. 441, 454, 27 S. Ct. 700, 51 L. Ed. 1128; Virginian R. Co. v. United States, 272 U. S. 658, 665, 47 S. Ct. 222, 71 L. Ed. 463; Atlantic Coast Line R. Co. v. State of Florida et al., 55 S. Ct. 713, 720, 79 L. Ed. 1451, opinion filed April 29, 1935.

■ There is doubt in our minds as to whether the injury done to the petitioner as a result of the Commission's order can properly be said to be irreparable. It is conceded that for the first four years after the petitioner's plant was established, the same services were rendered by the petitioner without allowance by the carriers. It is further conceded that during a subsequent two-year period, no allowances were

made. If the order is ultimately enjoined and the railroads renew the allowances, the petitioner will, at most have lost the allowances only during the period of the suit.

We have reached the conclusion that the exercise of sound discretion requires the denial of an injunction during the pendency of this suit. The petitioner however, should be given an opportunity to have the case tried as soon as it is ready for trial, and nothing which we have said in passing upon this application for a preliminary injunction is to be regarded as a determination upon its merits of any of the questions presented by the petition. We hold merely that, upon the record before us, a preliminary injunction should not be granted.

The application for a preliminary injunction is denied.

NOTE.—The report of the Commission and the order based thereon are as follows:

Interstate Commerce Commission

Minnesota By-Products Coke Company Terminal Allowance

Ex Parte No. 104
Practices of Carriers Affecting Operating Revenues or Expenses

Part II, Terminal Services.

Submitted October 17, 1934. Decided June 24, 1935.

Carriers' compensation under their line-haul rates found not to include service for which allowance is paid. Payment, therefore, found to be unlawful.

Same appearances as in the original report.

Twelfth Supplemental Report of the Commission

Division 6, Commissioners McManamy, Lee and Miller.
By Division 6:

In the original report in this proceeding, Propriety of Operating Practices, Terminal Services, 209 I. C. C. 11, certain principles were announced concerning the payment of allowances to industries for performing spotting service at their industrial plants, or the performance of such service by respondents in lieu of payment. This supplemental report pertains to an allowance of $1 per loaded car, paid by the Great Northern Railway Company and the Northern Pacific Railway Company to the Minnesota By-Products Coke Company for spotting service performed by the latter at its plant which is located within St. Paul, Minn., near Snelling and Hamline avenues.

This coke manufacturing company began operations in the year 1918, and its plant is served by the two railroad companies hereinbefore named. The plant facilities extend eastward and westward a distance exceeding 4,000 feet, while the width of the property ranges from a narrow strip at the western end to more than 800 feet at the eastern boundary line. Standard-gauge tracks, aggregating between 3.5 and 4 miles in length and having a maximum curvature of 18 degrees, lie within the plant inclosure and lead to approximately 20 points, scattered throughout the plant, where freight cars are spotted for loading and unloading. Near the western portion of the plant property the Great Northern and Northern Pacific maintain separate yards containing, respectively 3 tracks and 4 tracks, which range from 1,000 to 1,100 feet in length. One track from each yard extends to the boundary line of the coke plant and connects with tracks owned and maintained by the industry. These yards are slightly less than three miles from the breakup yards of the Great Northern at St. Paul and Minneapolis, Minn. The nearby yard tracks of the two respondents serve as points of interchange for freight cars consigned to and from this industrial plant.

Tonnage shipped via rail to the coke company is approximately 95 per cent. coal and the shipments average about 25 carloads per day. A portion of the coal is switched to the several coke ovens and the remainder to stock piles. That which goes direct to the ovens must be placed and unloaded at such times as it can be received. Outbound shipments, the major portion of which consists of coke, range from 15 to 90 carloads daily, and ordinarily the period of greatest activity is during the winter months. Railroad locomotives do not enter the property of the coke company. The switching of freight cars between the aforementioned interchange tracks and points of loading and unloading within the plant is performed entirely by the industry with its own motive power, and for this service the company is accorded an allowance of $1 per loaded car. From the interchange tracks to the most easterly loading and unloading points the distance is about 4,000 feet, but the average distance to all such points approximates 1,200 to 1,400 feet. Track scales are maintained within the plant near the western boundary. Loaded and empty cars en route from the interchange tracks to unloading and loading points are switched by locomotives and crews employed by the industry to its track scales

for weighing, and a similar operation takes place when the cars are moved in the opposite direction. Light weights are desired because in some instances they differ materially from the weights stenciled on the cars. This weighing service is performed primarily for the benefit of the industry, but some of the weights thus obtained are used by the railroads when rendering bills for transportation charges. Switching or weighing operations performed by an industry for its own convenience and benefit are not a part of transportation service which a carrier should be required to render, and therefore nothing for which an allowance should be paid. United States Cast Iron Pipe & Foundry Co. v. Director General, 57 I. C. C. 442. A carrier's duty under its line-haul rates involves only one placement of a car, the movement to be made without undue interference. Downey Ship Building Corporation v. Staten Island Rapid Transit Ry. Co., 60 I. C. C. 543.

All switching service within the plant since manufacturing operations were begun in 1918 has been performed by the industry with its own locomotives, but no spotting allowance was received from respondents prior to 1922. Effective in February of that year both railroads agreed to pay $1 per loaded car interchanged, on the understanding that an investigation would later be conducted to determine the expense of switching operations, and a study was subsequently made which indicated that it would cost respondents approximately $1.50 per loaded car to perform the spotting service from the train yard to the points of loading or unloading. This figure is predicated on a locomotive expense of $11.10 per hour. No consideration was given to the time consumed in weighing cars, delays occasioned by plant operations, or the time lost because of interference between plant locomotives and those operated by the respondent carriers. Under the governing rules the carriers' duty with respect to delivery terminates at the point of interruption, in this case, the scales. In other words, respondents are prevented from performing the spotting service within this plant in an uninterrupted movement at their ordinary operating convenience, and have therefore, fulfilled their common-carrier obligation under the line-haul rates by the delivery and receipt of cars on reasonably convenient interchange tracks. See Propriety of Operating Practices—Terminal Services, supra. Respondents paid the spotting allowance of $1 for a period of years without tariff publication, and eventually, because of doubt concerning the legality of such payments, the allowance was suspended from March 1, 1927, to July 15, 1929. By tariff publication effective on the latter date the allowance was re-established and has since been paid.

The evidence indicates that it requires 16 or more hours per day under normal conditions for a locomotive to perform all the switching service required at this industrial plant, and that 4 to 8 hours, depending on the extent of the plant operations, are consumed in switching cars to and from the interchange tracks. The operation of each of respondents' locomotives within the plant for the purpose of spotting freight cars while the industry engine performs the intraplant service would be impracticable, and this is conceded by the witness for the industry. In fact, the spotting service must be coordinated with plant operations, and to attain this objective the switching must be performed at such times as will meet the needs of the coke company. No obligation rests upon respondents to perform service beyond the agreed points of interchange solely at the convenience of the industry. Merchant Shipbuilding Corporation v. Pennsylvania R. Co., 61 I. C. C. 214, 217; Car Spotting Charges, 34 I. C. C. 609, 617.

We find that the respondents have complied with their obligations under the interstate line-haul rates by the delivery and receipt of carload freight on the interchange tracks described of record; that the service beyond the interchange tracks is a plant service; and that by payment of an allowance to the coke company for the service performed by it beyond the interchange tracks on interstate shipments, respondents provide the means by which the coke company enjoys a preferential service not accorded to shippers generally, and refund or remit a portion of the rates or charges collected or received as compensation for the transportation of property in violation of section 6 (7) of the act [49 USCA § 6(7)].

An appropriate order will be entered.

### Order.

At a Session of the Interstate Commerce Commission, Division 6, held at its office in Washington, D. C., on the 24th day of June, A. D., 1935

Minnesota By-Products Coke Company Terminal Allowance Ex Parte No. 104

Practices of Carriers Affecting Operating Revenues or Expenses.

Part II, Terminal Services.

Upon further consideration of the record in this proceeding concerning the law-

472

fulness and propriety of the allowance paid by the Great Northern Railway Company and the Northern Pacific Railway Company to the Minnesota By-Products Coke Company, for performance by the latter of spotting service within its plant at St. Paul, Minn., and the Commission having under date of May 14, 1935, made and filed a report in Propriety of Operating Practices, Terminal Services, 209 I. C. C. 11, containing its legal conclusions with respect to the general situation presented, and the division having on the date hereof made and filed a supplemental report containing its findings of fact and conclusions with respect to the allowance paid to the Minnesota By-Products Coke Company, which reports are hereby referred to and made a part hereof, and the division having found in said supplemental report that by the payment of said allowance the carriers hereinbefore named violate the Interstate Commerce Act as set forth in the above-mentioned reports:

It is ordered, that the Great Northern Railway Company and the Northern Pacific Railway Company be, and they are hereby, notified and required to cease and desist on or before August 15, 1935, and thereafter to abstain from such unlawful practice.

By the Commission, Division 6.

[Seal]    George B. McGinty, Secretary.