HAROLD SANDS, Doing Business under the Assumed Name of ROCHESTER BEAN EXCHANGE, Plaintiff, *v.* CALMAR STEAMSHIP CORPORATION, Defendant.

Supreme Court, Monroe County, February 13, 1937.

*Winchell, Macken, Goldwater & Donovan,* for the plaintiff.

*Harris, Beach, Folger, Bacon & Keating,* for the defendant.

WHEELER, J.   This case is submitted upon a stipulated statement of facts.   Plaintiff brings the action against defendant, a common carrier engaged in the transportation of goods by water in intercoastal commerce for breach of contract, for failure to transport beans by water at a rate quoted by defendant's agent, which rate was in fact less than the rate prescribed in the published tariff for such transportation.   In reliance on the rate quoted, plaintiff submitted a bid to the United States government for the sale of beans delivered at Mare Island, Cal.   Defendant refused to transport the beans at the rate quoted, and plaintiff was compelled to pay, and did pay, transportation charges at a rate in excess of the rate quoted.

It appears that on the 26th day of October, 1935, defendant quoted to plaintiff a rate of fifty-six and one-half cents per hundredweight, on shipment from Philadelphia to Mare Island, and agreed to protect plaintiff on such rate for the purpose of said bid.   The day following, October twenty-seventh, plaintiff submitted to the United States government a bid for sale of more than 100,000 pounds of beans at a definite price to be delivered at Mare Island, which bid was to be opened October 29, 1935.   On this latter date defendant wrote plaintiff to the effect that its agent had omitted in the quotation given an item of nine cents per hundredweight, transfer charge at San Francisco.   Defendant's tariff as published and filed did in fact provide a rate for this commodity of fifty-six and one-half cents plus nine cents per hundredweight for the transhipment at San Francisco.

The question at issue is whether the contract to charge plaintiff less than the published rates would, if performed, violate the Intercoastal Shipping Act of 1933 (U. S. Code, tit. 46, §§ 843–848), in that it would constitute a discrimination in favor of plaintiff as against other shippers of similar products.

The Intercoastal Shipping Act seems to be most specific in its terms, and leaves but little doubt as to its meaning.   It contains mandatory provisions compelling all carriers engaged in intercoastal commerce to file and publish schedules of rates, and also provides further: " Nor shall any common carrier by water in Intercoastal Commerce charge or demand or collect or receive a greater or less or different compensation for the transportation of passengers or property or for any service in connection therewith than the rates, fares, and/or charges which are specified in its schedules filed with the board and duly posted and in effect at the time."   (U. S. Code, tit. 46, § 844.)

The Intercoastal Shipping Act is amendatory of the Shipping Act of 1916 (as amd., U. S. Code, tit. 46, § 801 *et seq.*), which has only recently been passed upon by the Appellate Division of the First Department. (*Belmont Iron Works* v. *Pacific Coast Direct Line, Inc.*, 249 App. Div. 156.) In that case a contract was made between shipper and carrier which by error omitted an item contained in a tariff filed with the Shipping Board. The court held that the contract, if enforced, would result in unlawful discrimination, and was, therefore, unenforcible. The shipper was not allowed to recover the excess over the contract price which it paid under protest.

The act of 1933 appears even more explicit than the Shipping Act of 1916. The latter forbade discrimination by any " unjust or unfair device or means " (U. S. Code, tit. 46, § 815), whereas the former expressly forbids any discrimination. (See, also, *Prince Line, Ltd.*, v. *American Paper Exports, Inc.*, [D. C.] 45 F. [2d] 242; affd. [C. C. A.] 55 id. 1053, in which case a common carrier under the Shipping Act of 1916 was permitted to recover the difference between rates charged and rates actually paid by shipper.)

In the instant case the plaintiff insists that the contract is to be controlled by section 4 of the Intercoastal Shipping Act (U. S. Code, tit. 46, § 846), which provides as follows: " Nothing in this chapter shall prevent the carriage, storage, or handling of property free or at reduced rates, for the United States, State, or Municipal Governments, or for charitable purposes."

I am of the opinion that this above-quoted provision is inapplicable to sustain plaintiff's position under the circumstances here existing. The provision in question is identical with that contained in section 22 of the Interstate Commerce Act, as amended (U. S. Code, tit. 49, § 22), and, therefore, it seems logical to assume that it should be interpreted in the same manner. (*Prince Line, Ltd.*, v. *American Paper Exports, Inc.*, *supra.*)

In construing the provision in connection with the Interstate Commerce Act, it has been held improper to permit the benefit of special rates on government material to accrue to any one other than the government itself. (*Havens & Co.* v. *Chicago & N. W. Ry. Co.*, 20 I. C. C. 156; *Nashville, C. & St. L. Ry.* v. *State of Tennessee*, 262 U. S. 318; 43 S. Ct. 583; 67 L. Ed. 999; 25 Op. Attys.-Gen. 408.)

In the opinion of the Attorney-General (*supra*), it was stated in substance that the Interstate Commerce Act is not violated by reduction of freight rates, authorized by section 22 on materials and machinery used by the United States, or by parties contracting with them, for work upon irrigation systems, provided the government

receives the whole benefit of the reduced rate or concession; but it is violated if the contractor receives any portion of such benefit.

I am forced to conclude that it is the plaintiff shipper who would benefit by any reduction in rates, and not the government. By obtaining such a concession the plaintiff would be benefited, in that it would find itself able to bid more advantageously than other prospective bidders not receiving such special rates. Therein lies the vice of plaintiff's contention. All of these various acts aim to curtail the vicious practice resulting from discrimination. Discrimination would certainly result if a particular shipper, whether by inadvertence or design, is accorded an advantage which is not available to others.

Furthermore, it must be observed that neither plaintiff nor the government has asked for or demanded from defendant any preferential rates. Neither did the defendant in its letter of October twenty-sixth attempt to quote special reductions because of a shipment to the government, but on the contrary it quoted item 275 from its published schedule, omitting no doubt through error or inadvertence to include the extra transfer charge.

The alleged contract clearly offends the spirit as well as the letter of the Intercoastal Shipping Act, and is, therefore, void and unenforcible. (*Belmont Iron Works* v. *Pacific Coast Direct Line, Inc., supra,* and the cases therein cited.)

Motion granted dismissing the complaint, with costs. Order may enter accordingly.