## HUDSON & M. R. CO. v. HARDY (INTERSTATE COMMERCE COMMISSION et al., Interveners).

### No. 189.

Circuit Court of Appeals, Second Circuit.
April 10, 1939.

Writ of Certiorari Denied May 29, 1939.
See 59 S.Ct. 1038, 83 L.Ed. ——.

328

Thurman Arnold, Asst. Atty. Gen., Robert L. Stern, Sp. Asst. to Atty. Gen., and Thomas M. Ross, Atty., Interstate Commerce Commission, of Washington, D. C., Lamar Hardy, U. S. Atty., of New York City, and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., for defendant appellant.

Ezra Brainerd, Jr., and Alex M. Bull, both of Washington, D. C. (Carl A. Mead, of New York City, of counsel), for intervening defendants-appellants.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Wm. D. Whitney, John E. Buck, Donald C. Swatland, and Francis A. E. Spitzer, all of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and PATTERSON, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, Hudson & Manhattan Railroad Company, a corporation organized under the laws of the States of New York and New Jersey, owns and operates an electric railway between cities in those two states. It brought this suit in equity in the Southern District of New York to determine whether it was subject to the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; and to enjoin the defendant Hardy, who was the United States Attorney for the Southern District of·New York, from attempting to enforce the provisions of the Act against it. By leave of the court, appellants Interstate Commerce Commission, The Brotherhood of Locomotive Engineers, The Brotherhood of Railroad Trainmen, and The Brotherhood of Railroad Signal Men of America became intervening defendants. The Interstate Commerce had previously been duly· requested to, and had, upon findings made after hearings, determined that the above Act did apply to the plaintiff. The court below upon its own investigation of the facts reached a contrary conclusion and granted the injunction sought by the plaintiff. This appeal followed.

The plaintiff, being engaged in interstate commerce, does fall within the terms of the Railway Labor Act, 45 U.S.C.A. § 151, unless excluded by the limitation upon the broad definition of "carrier" in Sec. 1 of the Act contained in the following proviso: "Provided, however, That the term 'carrier' shall not include any street, interurban, or suburban electric railway, unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation now or hereafter operated by any other motive power. The Interstate Commerce Commission is hereby authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of this proviso."

The determination by the Interstate Commerce Commission that the Railway Labor Act did apply to the plaintiff was put on the ground that although it was an interurban electric railway it was operating as a part of a general railroad system of transportation. The procedure followed was correct and the determination must be upheld unless it was arbitrary or capricious. Shields v. Utah Idaho Central Railroad Company, 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. ——. That depends (1) upon whether the findings adequately support the determination and (2) upon whether the evidence adequately supports the findings.

As to the second phase of the inquiry, we must assume that the support is adequate since the evidence before the Commission does not appear in this record. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260; Nashville, C. & St. L. Ry. v. Tennessee, 262 U.S. 318, 323, 43 S. Ct. 583, 67 L.Ed. 999; Louisiana & P. B. R. Co. v. United States, 257 U.S. 114, 42 S.Ct. 25, 66 L.Ed. 156. Moreover, no one disputes that the findings were amply sup-

ported. That makes the decision turn wholly upon whether or not the determination is supported by the findings. That is to say, whether there was substantial ground for it even though facts were found which pointed the other way. For such a decision requires the application of technical knowledge which the Commission is designed to have and its appreciation of the force of the facts which prompted the determination should be given effect unless there is no substantial support for it. Substantial support for this determination is found in the findings of the Commission to the effect that the plaintiff operates its road in interstate carriage of passengers under a joint service arrangement with the Pennsylvania Railroad Company as to service to and from Newark, N. J., and under a contract providing that the plaintiff, acting as well for and on behalf of the Pennsylvania Company as for itself, employs the joint employees required to perform the joint service; that they shall be subject to the approval of the Pennsylvania Company and be familiar with its rules and regulations for the operation of trains; that it has about 1,300 employees engaged in railroad operation; that about ten per cent of all the plaintiff's employees are engaged in this joint service; that the wages of the employees engaged in this joint service are to be paid in proportions of about 40 per cent by the plaintiff and 60 per cent by the Pennsylvania; that they must pass the physical examinations required by the Pennsylvania Railroad; that plaintiff and the Pennsylvania furnish cars for the joint service in the proportion they pay the employees; that plaintiff is a party to fifteen passenger tariffs published by the Pennsylvania and to one published by the Lehigh Valley R. R. Company; that the Pennsylvania maintains a ticket office in the Hudson Terminal of the plaintiff where tickets may be purchased to any point which may be reached by travel wholly or in part over its lines; that there is an agreed division of the fares paid by all passengers handled jointly; that Pennsylvania commutation tickets and mileage books are honored by both carriers without transfers; that 22.97 per cent of the passenger revenue of the plaintiff within the last five years was derived from joint fares with the Pennsylvania; that during such period an average of over 40,000 joint-fare passengers per day were carried; and that when tickets

are sold by either the plaintiff and the Pennsylvania for the joint service to and from Newark they are in each instance for the through trip and show only the name of the issuing carrier.

Though these findings which do supply substantial support for the determination made by the Commission are to be balanced against other findings which point to the contrary, that is a task to be performed by the Commission under the authority granted it by Congress which places upon it the duty to make the determination. The findings above outlined, made after due hearing and consideration, show that at least the determination was not arbitrary or capricious. Consequently the determination cannot successfully be attacked in this suit. Shields v. Utah Idaho Central Railroad Company, supra.

Decree reversed and bill dismissed.