**RAILWAY LABOR EXECUTIVES' ASSOCIATION and Brotherhood of Locomotive Engineers, Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 87–1752.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 4, 1988.

Decided Oct. 25, 1988.

Harold A. Ross, Cleveland, Ohio, with whom William G. Mahoney and Clinton J. Miller, III, Washington, D.C., were on the brief for petitioners.

Louis Mackall, Atty., I.C.C., with whom Robert S. Burk, General Counsel, and Henri F. Rush, Deputy General Counsel, I.C.C., and John J. Powers, III and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D.C., were on the brief for respondents.

Edward D. Greenberg and David P. Street, Washington, D.C., were on the brief for intervenor.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and POLLACK,* Senior District Judge.

MILTON POLLACK, Senior District Judge:

Petitioners, the Railway Labor Executives' Association and the Brotherhood of Locomotive Engineers (the Unions), seek review of the Interstate Commerce Commission's determination that the Staten Island Rapid Transit Operating Authority is not subject to the Railway Labor Act (RLA) by virtue of 45 U.S.C. § 151, First. We affirm the ICC's determination.

## BACKGROUND

The Staten Island Rapid Transit Operating Authority (SIRTOA), a subsidiary of the State of New York's Metropolitan Transit Authority, conducts rail passenger service over a 14.5 mile line between St. George and Tottenville on Staten Island. Prior to 1971, the Baltimore and Ohio Railroad Company (B & O) owned and operated the line through its Staten Island Rapid Transit Railway (SIRT) subsidiary. In 1970 New York City obtained ICC authorization to acquire and operate passenger rail service on the line. The certificate of authorization required, *inter alia*, that B & O continue to provide freight service, and

---

* Of the U.S. District Court for the Southern District of New York, sitting by designation pursuant to 23 U.S.C. § 294(d).

that SIRTOA maintain the track and allow B & O to continue its interstate freight service over the line.

In 1979, in response to a request by several labor organizations, the ICC made a determination that SIRTOA was a "carrier" within the meaning of 45 U.S.C. § 151, First, and thus subject to the RLA. *See Brotherhood of Locomotive Eng'rs v. Staten Island Rapid Transit Operating Auth.*, 360 I.C.C. 464 (1979), *aff'd sub nom. Staten Island Rapid Transit Operating Auth. v. ICC*, 718 F.2d 533 (2d Cir.1983). This decision turned on the fact that the ICC certificate of authority required SIRTOA to maintain the track for B & O's carriage of interstate freight over the line.

B & O's subsidiary SIRT subsequently transferred its freight trackage rights to the Staten Island Railway Corporation (SIRY), a subsidiary of the Delaware Otsego Company. Then in 1986, the ICC authorized SIRTOA's abandonment of its obligation to allow freight carriage, and SIRY's duty to provide freight service, over the line. Consummation of this transaction ended both SIRTOA's legal right and obligation to conduct interstate freight service over the line.

SIRTOA then petitioned the ICC for an order declaring that SIRTOA no longer fell within the definition of "carrier" contained in 45 U.S.C. § 151, First, or alternatively, that SIRTOA qualifies as an interurban electric railroad within the meaning of that section's proviso. The ICC found SIRTOA's connection with the general steam railroad system of transportation ended with the abandonment of its legal right and obligation to allow passage of interstate freight over its line, so that the electric railroad proviso excludes SIRTOA from RLA coverage under 45 U.S.C. § 151, First. The Unions petition for review of that determination.

DISCUSSION

The statute, 45 U.S.C. § 151, First, provides:

The term "carrier" includes any express company, sleeping car company, carrier by railroad, subject to [the Interstate Commerce Act], and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or perform any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, ... *Provided, however,* That the term "carrier" shall not include any street, interurban, or suburban electric railway unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation now or hereafter operated by any other motive power. The Interstate Commerce Commission is authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of this proviso.

Congress committed determination of the scope of the electric railroad proviso to the ICC. Consequently, our review of the ICC's finding that SIRTOA falls within the proviso [1] is narrow; the only question is whether the ICC in making its determination departed from applicable law or was arbitrary and capricious. *Shields v. Utah Idaho R.R.*, 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111 (1938). We find the ICC's conclusion that SIRTOA falls within the proviso consistent with the text of the statute and have no cause to displace the ICC's reasonable interpretation of the provision.

1. The ICC indicated, "even if we were to find that SIRTOA is a carrier under the [Interstate Commerce Act] or comes within the common control provisions of the RLA, the electric railway proviso to section 1, First would today operate to exclude it from the carrier category." ICC Finance Docket No. 30879, slip op. at 6

(Sept. 21, 1987). Therefore, we need not reach the question of the extent of ICC's authority to determine carrier status under the two alternative definitions in section 1, First, or the appropriate standard of review for any such determination.

*See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Petitioners, the Unions, challenge the ICC's determination that SIRTOA falls within the electric railroad proviso on the grounds that the Commission failed to consider: (1) prior decisions which hold that application of the proviso turns on a physical connection to the general system of rail transportation; (2) the purported purpose behind the proviso—to preserve RLA coverage notwithstanding later changes in the extent of operations or the motive power of a railroad; and (3) other statutes which arguably extend RLA coverage to commuter railroads on the Northeastern Seaboard. These arguments lack merit.

■ The ICC's determination that SIRTOA does not operate as part of a general steam-railroad system of transportation is not arbitrary and capricious. There would be no reason for delegating this determination to an "expert" agency if a mere physical connection with the interstate rail system, unaccompanied by a legal right to conduct interstate traffic or actual passage of interstate traffic over a railroad line, were enough to exclude a railroad from the proviso. The case cited by the Unions, *Hudson & Manhattan R.R. v. Hardy,* 103 F.2d 327 (2d Cir.), *cert. denied,* 307 U.S. 640, 59 S.Ct. 1038, 83 L.Ed. 1521 (1939), and other decisions holding that a particular railroad fell outside the proviso based, in part, on a physical connection with the interstate system, all involved situations where interstate freight actually travelled over the line. *See Staten Island Rapid Transit Operating Auth. v. ICC,* 718 F.2d 533 (2d Cir.1983); *Piedmont & Northern Ry. v. ICC,* 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115 (1932) (construing a similar exclusion in the Interstate Commerce Act); *Texas Elec. Ry. v. Eastus,* 25 F.Supp. 825 (N.D.Tex.1938), *aff'd,* 308 U.S. 512, 60 S.Ct. 134, 84 L.Ed. 437 (1939); *Sprague v. Woll,* 124 F.2d 767 (7th Cir.1941). Here, no interstate freight actually passes over SIR-TOA's line, nor does any person hold the legal right to carry such freight over the line. Therefore, we cannot find beyond the bounds of the Commission's authority under 45 U.S.C. § 151, First, the ICC's determination that SIRTOA does not operate as part of the general system of rail transportation.

■ Similarly, we find no support in the statute for petitioners' contention that Congress intended to preserve RLA coverage under 45 U.S.C. § 151, First for all railroads then operating as part of the interstate system, notwithstanding later changes in operations. The clear language of the statute excludes from the proviso only those street, interurban, or suburban electric railways "operating as part of a general steam-railroad system of transportation," not all railways that once comprised a part of that system.

■ Finally, we decline to consider whether SIRTOA may be subject to the RLA notwithstanding the Commission's order excluding SIRTOA from coverage under 45 U.S.C. § 151, First. The Unions argued to the Commission that the labor protective provisions included in the ICC certificate of authority issued in 1970, as well as two other statutory prescriptions, 45 U.S.C. § 591 and 49 U.S.C. § 10504(c), required or implied RLA coverage. The ICC did not reach those issues, however, because (1) unlike 45 U.S.C. § 151, First, these statutory provisions do not assign a special role to the Commission in determining a carrier's status, and (2) the current effectiveness of the labor protective provisions is a matter to be determined (presumably by the ICC) independent of RLA jurisdiction under 45 U.S.C. § 151, First. Following the Commission's lead, and having no agency disposition on point to review, we do not take up those issues.[2]

For the reasons stated, the petition for review is

DENIED.

---

**2.** Petitioners, with others, filed suit in the Eastern District of New York seeking a declaration that SIRTOA is subject to the RLA by reason of 45 U.S.C. § 591 and 49 U.S.C. § 10504(c). Nothing in this opinion disposes in any way of the issues before that court.