73 So.2d 188

**KANSAS CITY SO. RY. CO.**

**v.**

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 41389.

April 26, 1954.

Rehearing Denied May 31, 1954.

Fred S. LeBlanc, Atty. Gen., Joel B. Dickinson, Asst. Atty. Gen., for defendant-appellant and interveners.

Ainsworth & Ainsworth, Robert A. Ainsworth, Jr., New Orleans, Stanley N. Barnes, Asst. U. S. Atty. Gen., George R. Blue, U. S. Atty., G. Harrison Scott, Asst. U. S. Atty., New Orleans, Raymond Krebill, Laurence E. Masoner, Washington, D. C., for intervenors.

Jos. R. Brown, W. E. Davis, Kansas City, Mo., Wilkinson, Lewis & Wilkinson, Shreveport, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-appellee.

HAMITER, Justice.

This litigation arises out of a freight rate which plaintiff, the Kansas City Southern Railway Company (hereinafter sometimes referred to as the railroad), quoted and granted to the United States Government in 1949 for the transportation by railroad tank cars of its aviation gasoline, destined for consumption by military aircraft in the defense of our country, from Lake Charles, Louisiana, to a point 1,400 feet inside the Government's Barksdale Air Force Base located in Bossier Parish of the same state. The rate so allowed was less than that which, in accordance with a published tariff, would have been charged a member of the general public for like transportation.

In consequence of the quotation (H. N. Roberts' Quotation No. 49) the Louisiana Public Service Commission cited and ruled the railroad to show cause why it should not be found guilty of violating the Commission's General Order No. 2, adopted July 1, 1921.

After a hearing on the rule, at which appearances were also made for and on behalf of Louisiana Tank Truck Carriers, Inc., and the Secretary of Defense of the United States (the former protesting the reduced rate allowed and the latter advocating it and supporting the railroad), the Commission issued Order No. 6128, reading as follows:

"Ordered, that respondent herein cease and desist from the practice of quoting or assessing any rate for the transportation of property for the United States Government between Barksdale Field, Louisiana, and any other point within the State of Louisiana, where such transportation does not traverse any other State; it being the intention of this order that, as to such transportation, the United States Government shall be accorded no different treatment from that accorded other shippers in Louisiana intrastate commerce."

In due time the railroad applied for a rehearing and the Secretary of Defense demanded a vacating of Order No. 6128. The Commission refused both applications.

·Subsequently, the railroad instituted this suit against the Louisiana Public Service Commission and the individual members thereof seeking a review of and injunctive relief against Order No. 6128. To the petition such defendants filed an answer, praying for a dismissal of the suit.

· Intervening in the cause on the side of the defendants was Louisiana Tank Truck Carriers, Inc., its principal allegation being as follows:

"The use of the rates in H. N. Roberts Quotation No. 49 has caused a diversion of traffic of the United States Government, and particularly aviation gasoline from Lake Charles, Louisiana, to Barksdale Field, Louisiana, from motor common carriers, members of Louisiana Tank Truck Carriers, Inc., intervenor herein; said traffic has been diverted to plaintiff in this case because of the application of a lower or reduced rate per cwt. The rate which plaintiff has quoted to the United States Government is lower than its regular or normal rate to any other shipper between the same points for shipments moving in intrastate commerce."

Also intervening, but joining in and supporting the demands of the plaintiff railroad, was the United States Government.

Following a trial of the cause the district·court rendered judgment in favor of the plaintiff, decreeing null and void Order No. 6128 of the Louisiana Public Service Commission and permanently enjoining

and prohibiting defendants from enforcing that order.

The defendants and Louisiana Tank Truck Carriers, Inc., an intervenor, are appealing from the judgment.

In justification of the proceedings against plaintiff and the rendition of Order No. 6128, the Louisiana Public Service Commission and its members maintain that the reduced transportation rate allowed the United States Government was unduly discriminatory. Thus, quoting from their original brief, defense counsel state:

" * * * The basis of this citation was that the United States Government for whose account this gasoline was transported, was being charged a lower rate than that available to other shippers. General Order No. 2, above referred to, expressly provides that there shall be no unjust discrimination, undue preference or advantage, or undue prejudice in favor of or against any shipper, passenger or carrier of any of the transportation facilities or services rendered by any common carrier or other public service corporation subject to supervision, regulation and control of this Commission."

Again, in a supplemental brief, defense counsel say:

"We are not saying that the federal government could not have or would not have been given the same consideration as is allowed the state, city and parish governments in the granting of rates lower than

those fixed by the Commission's General Order No. 2. * * * The pertinent fact for consideration is that the Kansas City Southern Railway Company who is under the jurisdiction of the Public Service Commission, in contracting with the federal government, ignored the rules and regulations of the Commission, and in contravention and violation thereof, quoted rates for transportation below the minimum established by the Commission, thereby causing undue discrimination against other carriers within the state by eliminating the chance for competitive bidding by the other carriers, they being bound by and complying with the regulations on rates as fixed by the Commission. * * *"

The provision of General Order No. 2 respecting discrimination, which the railroad allegedly violated, reads:

"(4) There shall be no unjust discrimination, undue preference or advantage, or undue prejudice in favor of or against *any shipper, passenger or user* of any of the transportation facilities or services rendered by any common carrier or other public service corporation subject to supervision, regulation and control by this Commission, * * *."

This provision, according to our appreciation of it, does not purport to regulate competition among carriers, as the above excerpts from the briefs of defense counsel suggest it does. Its purpose, as is clearly indicated by the language employed, is to prevent a common carrier from rendering to a user of its transportation facilities (a shipper or a passenger) any unreasonable preference or advantage over other users. This being true the question to be determined here is whether plaintiff, by granting the reduced rate to the United States for the transportation of its aviation gasoline, unduly favored the government and unjustly discriminated against other shippers, i. e., others using the facilities of such common carrier.

It has been recognized universally that there are numerous classes of patrons (shippers or passengers) of common carriers that may be preferred without the preference constituting unjust discrimination against other users. In fact, such recognition is noted in the General Order No. 2 presently under consideration, paragraph 5 of which recites:

"Nothing herein, or in the orders, rules and regulations of the Railroad Commission of Louisiana as they now exist, shall prevent the carriage, storage or handling of property free or at reduced rates, for the state, parish, city or town governments, where the state, parish, city or town government is the direct beneficiary of such free or reduced rates, or for charitable purposes, or to or from fairs and expositions for exhibition thereat, or the free carriage of destitute and homeless persons transported by charitable societies, and the necessary agents employed in such transportation, or the issuance of mileage, excursion, or commutation passenger tickets."

The Interstate Commerce Act, 49 U.S. C.A. § 1 et seq., contains somewhat similar

provisions which, incidentally and additionally, specifically except the United States Government. In interpreting those provisions, in Interstate Commerce Commission v. Baltimore and Ohio Railroad Company, 145 U.S. 263, 12 S.Ct. 844, 848, 36 L.Ed. 699, the United States Supreme Court said:

"The principal objects of the interstate commerce act were to secure just and reasonable charges for transportation; to prohibit unjust discriminations in the rendition of like services under similar circumstances and conditions; to prevent undue or unreasonable preferences to persons, corporations, or localities; to inhibit greater compensation for a shorter than for a longer distance over the same line; and to abolish combinations for the pooling of freights. It was not designed, however, to prevent competition between different roads, or to interfere with the customary arrangements made by railway companies for reduced fares in consideration of increased mileage, where such reduction did not operate as an unjust discrimination against other persons traveling over the road. * * *

* * * * * *

"The unlawfulness defined by sections 2 and 3 consists either in an 'unjust discrimination' or an 'undue or unreasonable preference or advantage,' and the object of section 22 was to settle beyond all doubt that the discrimination in favor of certain persons therein named should not be deemed unjust. It does not follow, however, that there may not be other classes of persons in whose favor a discrimination may be made without such discrimination being unjust. In other words, this section is rather illustrative than exclusive. * * *"

The court ultimately concluded that the granting a "party rate ticket" to certain passengers was not unjustly discriminatory against other passengers, even though such type of ticket was not included or mentioned in the excepting clauses of Section 22.

The same interpretation was given the Interstate Commerce Act in Nashville, Chattanooga & St. Louis Railway v. State of Tennessee, 262 U.S. 318, 43 S.Ct. 583, 585, 67 L.Ed. 999. However, therein the court held that a preferential rate granted a governmental agency might result in undue prejudice to other carrier patrons. In this connection, after discussing the applicable legal principles, it said: "The grant of a lower rate on road material to a government, engaged in highway construction, may benefit the government without subjecting to prejudice any person, locality or class of traffic. But a lower rate may result in giving to a single quarry within the state all of the governmental business, so that competing quarries and localities within or without the state, or interstate traffic, would be prejudiced. * * *"

Pertinent here also is New York Telephone Company v. Siegel-Cooper Company, 202 N.Y. 502, 96 N.E. 109, 110, 36 L. R.A.,N.S., 560, in which the New York Court of Appeals permitted the plaintiff

telephone company to "make a discount of 25 per cent. from its usual charges for telephone service, in favor of the city itself, regularly incorporated charitable institutions, and regularly ordained clergymen, without entitling all its other patrons to a like discount for service of the same kind". Although common-law principles were determinative of the case they, like the instant General Order No. 2, were founded entirely on public policy. As stated by the court therein: "The common law upon the subject is founded on public policy, which requires one engaged in a public calling to charge a reasonable and uniform price to all persons for the same services rendered under the same circumstances. * * The rule requires reasonable and impartial charges to all, but the exception permits a reduction when special facts make it reasonable and just. * * * There can be no favoritism, no arbitrary reduction in favor of a particular customer, and no undue advantage to one person through undue disadvantage to another, but discriminations founded reason and justice may be made. * * * " Further, the court said:

"Moreover, the law against unreasonable discrimination rests on public policy. It is forbidden because it is opposed to the interest of the public, which requires that all should be treated alike under like circumstances. Discriminations, however, in favor of the public are not opposed to public policy, because they benefit the people generally by relieving them of part of their burdens. In the absence of legislation upon the subject, such discriminations cannot be held illegal, as matter of law, without overturning the foundation upon which the rule itself is built.

*    *    *    *    *    *

"We think that according to the common law, as in force prior to recent legislation on the subject, the discriminations in question were neither unreasonable nor unjust as matter of law, because they were in favor of the public, and because the favored classes were in a different situation and were surrounded by different circumstances from those affecting the general patrons of the plaintiff."

▇▇▇ Although the presently considered reduced rate allowed the United States was in a sense discriminatory, there was no showing whatever before the Louisiana Public Service Commission or in the district court that it was unreasonable, unjustified, or prejudicial to the rights of any other users of plaintiff's transportation facilities. On the contrary the government, in its petition of intervention herein, made the following affirmative averments which, being undenied, are to be taken as true, to-wit: "The rate involved in this proceeding pertains to the movement of aviation gasoline exclusively for the United States of America, a commodity essential to the defense program being carried on at Barksdale Field which is for the benefit of all the people of the United States, including, of course, citizens of the State of Louisiana. The element of competition between the Federal Government and commercial

shippers is non-existent." We conclude, therefore, that the action of plaintiff did not constitute an unjust discrimination violative of General Order No. 2.

Plaintiff further contends that since Barksdale Air Force Base is a possession of the United States all shipments thereto constitute interstate commerce over which the Louisiana Public Service Commission has no jurisdiction. This contention, maintained by the district court, need not be and is not considered in view of our above announced conclusion.

For the reasons assigned the judgment appealed from is affirmed.