THORNAL, Justice.
Petitioner United States of America asks us to review by certiorari an order of the respondent Commission defining its powers regarding the fixing of rates for intrastate transportation of goods.
We must determine whether the respondent State Commission has jurisdiction over rates for the Florida intrastate transportation of property for the United States Government.
The respondent Commission is the State agency empowered to regulate the rates and services of common carriers in Florida. *434 The United States engages the services of common carriers for the transportation of its own property and for the transportation of household effects of military personnel between points within the State. The United States petitioned the respondent Commission to .restrict its own rate making powers by ordering that it had no authority to fix the rates to be charged by common carriers for the types of intrastate transportation specifically above described. The Commission has concluded that it has the power to fix the intrastate .rates to be charged by common carriers for the aforementioned services. It further concluded that by law, Florida carriers are prohibited from entering into arrangements with the United States Government for the transportation of such goods for any rate other than that stipulated in the approved tariff on file with the respondent Commission. The United States now requests us to review and ultimately quash the subject order.
It is contended by the petitioner that the so-called “supremacy clause” of the United States Constitution precludes state interference with the authority of the Federal Government to negotiate for a satisfactory intrastate .rate for the transportation of the goods described above.
Respondent Commission contends that the petitioner is not bound to use the services of the intrastate common carriers, but that when it does it must pay the rates approved by the respondent in the interest of maintaining an ordered and well-balanced transportation system.
We are here confronted by a potential collision between asserted constitutional powers. As we shall see, the petitioner relies upon Article VI, Clause 2, Constitution of the United States (referred to hereafter as Article VI) which reads as follows :
“Clause 2. This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
This is g-enerally described as the “supremacy clause.”
The respondent Commission establishes the point of cleavage by asserting that the power to regulate commerce within its own borders was one of those powers reserved to the States by the Tenth Amendment of the Constitution of The United States, which reads as follows:
“The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.”
We shall refer to the foregoing merely as “the Tenth Amendment.”
In order to understand the positions of the contending parties, we must evaluate the nature and relative scope of authority of the federal and state governments as delineated in the Constitution of the United States.
It is clear that the government of the United States is one of delegated powers. It is authorized to exercise only those powers specifically delegated or essentially implicit in the powers delegated by the United States Constitution. By virtue of the Tenth Amendment, all other powers not so delegated to the federal government nor prohibited to the states are reserved to the latter. It is this great reservoir of authority that enables the several states to function within the limits of their jurisdictional areas, without colliding with the federal authority.
On the other hand, in those areas where the United States Constitution has specifically or by essential implication deposited the power to act in the federal *435 government, then by virtue of the quoted language of Article VI, supra, the assertion of such power by the federal government is the supreme law of the land. In those areas the authority of the states is necessarily subordinate. This is merely an abbreviated statement of the historic concept of divided sovereignty which distinguishes our American democracy as a unique system of government; one which projects the exercise of federal power into its proper orbit, and thereby exposes the remainder of the political firmament to state control.
There can be no doubt but that in the exercise of those powers delegated to it by the Constitution the federal government must be permitted to act without let, hin-derance or restriction by the several states. The Constitution contemplates that in the interest of all the people, only certain functions can be efficiently and effectively exercised by the general government. When the general government proceeds to execute these functions for the good of all of the people, it seems only logical that a small segment of the people should be precluded from interfering. This is accomplished by the application of the so-called “supremacy doctrine” which, in effect, is summarized above. The principle was first proclaimed by Chief Justice Marshall in McCulloch v. Maryland, 1819, 4 Wheat. 316, 4 L.Ed. 579. Perhaps this opinion is best identified by its classic dictum that “the power to tax involves the power to destroy.” However, in interpreting the Constitution the decision proclaimed the supremacy of the general government in those areas in which the federal organic law directed it to function. There is as much logic and common sense to this rule as there is to the correlative rule which requires the federal government to refrain from encroachment upon the reserved powers of the states made sacrosanct against federal interference by the Tenth Amendment. Barron, etc. v. Mayor and City Council of Baltimore, 7 Pet. 243, 8 L.Ed. 672, 675; Gibson et al. v. Florida Legislative Investigation Committee, Fla. 1959, 108 So.2d 729, certiorari denied 360 U.S. 919, 79 S.Ct. 1433, 3 L.Ed.2d 1535.
Reverting to the situation immediately at hand, we recall that the United States government causes to be transported by common carrier between points in Florida its own property as well as the household goods of servicemen moving under orders. For the transportation of both types of property the petitioner wishes to obtain competitive bids on rates or else negotiate rates with common carriers without the necessity of adhering to the rate structure approved by the respondent Commission and reflected by the carrier’s tariff on file with the Commission. The State Commission insists that the United States Government is not bound to use the services of these carriers, but that if it does it should pay established rates which have been approved after public hearings. The respondent Commission takes the position that the carriers, as distinguished from the United States Government, are bound by various sections of the Florida Statutes which expressly prohibit any discrimination in rates and charges made by common carriers. To this end we are urged to hold that the Commission is within its authority to require the carriers to abide by these statutes even though they be transporting goods of the United States or military service personnel under United States Government bills of lading. Sections 323.08, 323.19, 350.07, 350.08, 350.09, 350.12, 350.36, 350.65, 350.67, and 352.19, Florida Statutes, F.S.A.
The obvious purpose of these statutory enactments which prohibit discriminatory rate practices is to prevent unjust favoritism to shippers in the commercial markets^ They are enacted to maintain a balanced, financially sound, transportation system to serve private commerce and other private activities efficiently and without discrimination. Aside from the protective provisions of the supremacy clause of Article VI, it is appropriate to observe that the government of the United States is not engaged in competitive commercial activities and any econ *436 omies effected by it in the fulfillment of a delegated responsibility redounds to the benefit of all of the people and not to any particular group.
The petitioner reminds that the Constitution imposes upon the government of the United States the responsibility of maintaining the national defense, which obviously includes the various components of the military establishment. The property which it seeks to transport within Florida is a multitudinous number of items of jnjli-ta^^quijDmea^ owned by the United States, as wejh as household goods of service personnel. ¡These goods move under government bills of lading and the transportation charges are paid by the United States. We are reminded that the agreement of the government to move the household goods of servicemen is a part of the government contract with the men at the time of their enlistment. It is an inducement to attract them to join and remain in the military service. Provision for such transportation was authorized by the Career Compensation Act of 1949 (63 Stat. 802) 37 U.S.C.A. § 253(c). The cited statute is specific authority for the transportation of household goods of service personnel and for the payment of the cost thereof as a part of compensation inducement offered to men in the military establishments. Under regulations promulgated by the heads of the various departments of the defense establishment, such goods are hauled under United States Government bills of lading. Cf. 32 C.F.R. Part 206 and Part 208; Executive Orders Nos. 10084 and 10053, U. S. Code Congressional Service, 81st Congress, First Session, 1949, pp. 2771 and 2714 et seq. Statements for the cost of the transportation are sent to government disbursing officers. They are audited, approved and paid as any other government obligation and are in no sense the financial responsibility of the individual serviceman.
A series of cases within the past two years appear to us to dispose of this matter in favor of the petitioner with reference to both types of property here involved. The principal case is Public Utilities Commission of State of California v. United States of America, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470. In the California case last cited, the Supreme Court of the United States simply applied the so-called supremacy doctrine to strike down a statute of the State of California, the effect of which was to prohibit common carriers from granting reduced rates to the United States in connection with the transportation of property for the armed forces, until such proposed reduced rates could be approved by the State Utilities Commission. The United States Court reviewed the policy of the Government as reflected by its regulations controlling the shipment of federal property. These regulations, among other things, reflected a policy of negotiating rates where necessary to effect a saving in transportation costs. The conflict was observed to be apparent between the federal policy of negotiated rates and the State policy of regulation of such rates. The conflict was resolved in favor of the federal policy under the supremacy clause and the State’s statute was held of no effect.
The Public Utilities Commission of State of California v. United States, supra, has been followed consistently in a number of other state and federal cases. In Railroad Commission of Texas v. United States, 317 S.W.2d 927, the Supreme Court of Texas held that the federal government is free to act with regard to the rates that it shall pay for transportation of its goods and personnel in intrastate commerce without regard to the rates stipulated or approved by the State Railroad Commission. We think it unnecessary to do more than mention a number of decisions to the same point. See Kansas City So. Ry. Co. v. Louisiana Public Service Commission, 225 La. 399, 73 So.2d 188; United States v. Pennsylvania Public Utility Commission, 393 Pa. 537, 143 A.2d 341; Arkansas Power & Light Co. v. Arkansas Public Service Commission, Ark., 330 S.W.2d 51; Benton Rapid Express, Inc. v. United States, Ct.Cl., 171 F.Supp. 868; Union Transfer Co. v. *437 United States, Ct.Cl., 168 F.Supp. 217; Hughes Transport, Inc. v. United States, Ct.Cl., 168 F.Supp. 219.
Although the Commission’s order under review announces a contrary position, the respondents by their briefs reluctantly concede that the decisions which we have mentioned preclude them from regulating intrastate rates for the transportation of property owned by the United States Government. They continue to contend that the same rule does not apply to the transportation of property owned by service personnel when such transportation is effected by the government under the circumstances summarized above. We can see little distinction in principle. In both instances it is the ob- ( ligation of the federal government to see to the transportation of the property. In both instances the property is being moved by the federal government in the fulfillment of its required responsibility to provide for the national defense. In executing this function and in an obvious effort to preserve high morale among servicemen, as well as to provide reasonable compensation for them in order to maintain their families, the Congress, by statutory enactment, has made provision for the transportation of their household goods at government expense. The regulations promulgated pursuant to this statutory authorization have stipulated the procedures for carrying out this policy. These regulations have the force and effect of law. Miller v. State of Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231. In moving both types of property the federal government is acting in the interest of all the people of the country. As pointed out above, when so acting within the scope of its delegated constitutional powers the conduct of the federal government should not be unduly burdened or circumscribed by the imposition of state-imposed restrictions.
If a state could control the manner or method of the exercise of a strictly federal power it could prevent its exercise altogether. Such interference is precluded by the United States Constitution.
We deem it unnecessary to conclude that the Florida Statutes cited above contravene either the federal or State Constitution. It is unnecessary to do so. We prefer to rely on the proposition that if they were applied to the instant situation as decided by the order of the respondent Commission we would be compelled to conclude that to the extent of the situation presented by this record, the statutes would necessarily be unconstitutional. Being cognizant of our responsibility to avoid, if at all possible, any construction that would reflect adversely on the constitutionality of a statute we prefer to rely on the proposition that the Florida Statutes above cited do not apply to the types of transportation here requested by/ the federal government and described in the forepart of this opinion. It is our conclusion that the respondent Commission’s application of the Florida Statutes is precluded by the supremacy clause of the Article VI and that the acts of Congress enacted pursuant thereto supersede the state statutes when related to the instant transactions.
We have not overlooked the contention that 37 U.S.C.A. § 253(c) also authorizes the government to “reimburse” a serviceman for the cost of shipping his household goods. Respondents suggest that this indicates a congressional intent to provide merely for shipment by the individual and repayment by the government. We think this is a distinction without a difference. The government ultimately pays the bill anyway. The same section authorizes the government to do the transporting and it is that aspect of the statute which we have under consideration.
The order under assault, to wit: Order No. 4890, issued by the respondent Commission, under date of January 6, 1960, is hereby quashed and the matter is remanded to the respondent Commission for the entry of an order consistent herewith.
THOMAS, C.J., and TERRELL, HOB-SON and DREW, JJ., concur.
It is so ordered.